# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION (DETROIT)

In re:                                                    Chapter 13

Louis F. Fulayter, Jr.,                                   Case No. 19-53196
a/k/a Louie F. Fulayter,
                                                          Hon. Phillip J. Shefferly
          Debtor.

_____/

## OPINION GRANTING DEBTOR'S MOTION TO DISMISS CHAPTER 13 CASE AND DENYING CREDITOR'S MOTION TO CONVERT CHAPTER 13 CASE

## Introduction

Before the debtor filed this Chapter 13 case, the debtor and his former spouse were involved in a long and acrimonious divorce proceeding that eventually resulted in a judgment. The judgment did not bring them closure. They continued to fight in multiple courts, about multiple issues.

The debtor, apparently thinking that he might have good luck in continuing the fight in a bankruptcy court, filed this Chapter 13 case. Predictably, the Chapter 13 case brought the debtor a new set of problems with his former spouse, his other creditors, and the trustee.

With his Chapter 13 case mired in disputes, and in the midst of a falling out with his lawyer, the debtor no longer saw the bankruptcy court as a good place to be and moved to dismiss his case. Ordinarily that would be no problem in a Chapter 13 case. But the tables had turned. The debtor's former spouse, apparently now thinking that the bankruptcy court gives her a friendly forum to continue the fight, filed a motion to convert the debtor's case to Chapter 7 because of bad faith conduct by the debtor. The debtor says he has an absolute right to dismiss. His former spouse says he forfeited that right by his conduct, and the case should be converted. For the reasons set forth in this opinion, the Court will grant the debtor's motion to dismiss and deny the former spouse's motion to convert this Chapter 13 case.

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(A) over which the Court has jurisdiction under 28 U.S.C. § 1334(a).

## Facts

There are many disputed facts in this case. The following facts are not in dispute, and are all taken from the voluminous papers in the Court file.

Louis Fulayter, Jr. ("Louie") and Holly Fulayter ("Holly") married in 1994. Before they were married, Louie had started a business known as Louie's Tree Service. After they were married, they both worked in the business, which grew, became

successful, and provided them with a very good living. They accumulated substantial real and personal property assets over the years.

On October 28, 2015, Holly filed for divorce ("Divorce Case") in the Oakland County Circuit Court for the State of Michigan ("Michigan Court"). Louie and Holly agreed to the appointment of an arbitrator. The arbitration was vigorously litigated, to say the least, encompassing six days of hearings, with multiple lay and expert witnesses, and volumes of documents. On September 5, 2018, the arbitrator issued a lengthy and detailed Final Opinion and Award ("Arbitration Opinion") that comprehensively addressed the parties' assets, debts, support, lawsuits, business, discovery disputes and allegations of misconduct against each other.

On October 16, 2018, the State Court entered, by consent of Holly and Louie, a Judgment of Divorce ("JOD"). The JOD expressly recognizes the appointment of the arbitrator and states that the JOD is made "in accordance with" the Arbitration Opinion.

While Holly and Louie were litigating the Divorce Case, on August 15, 2016, their three grown children, Andrew, Louie III, and Lindsay ("Children"), filed a lawsuit of their own ("Illinois Case") against Holly and Louie in Pike County Circuit Court for the State of Illinois ("Illinois Court"). The Children alleged that their parents owned multiple parcels of farmland property in Pike County, Illinois ("Pike Farm"), and that they had worked for many years on the Pike Farm without compensation based on their parents' promise to someday transfer the Pike Farm to them. The Children alleged that

- 3 -

their parents broke that promise and requested that the Illinois Court order Holly and Louie to transfer the Pike Farm to them.

A few months after the State Court entered the JOD in the Divorce Case, Holly and Louie settled the Illinois Case with the Children. On January 4, 2019 the Illinois Court entered an "Agreed Order" — signed by Holly, Louie, and the Children — that provided for Holly and Louie to establish an irrevocable trust, with the Children as the sole beneficiaries, and to transfer the Pike Farm into the trust by quit claim deed. On May 31, 2019, Holly, Louie, and the Children all signed a document titled "Trust Agreement Louis and Holly Fulayter Irrevocable Trust" ("Trust"). The same day, the Illinois Court entered an order that directed the parties to the Illinois Case "to comply with the Trust." Despite this order, no quit claim deed for the Pike Farm was ever executed and delivered to the Trust.

Although Holly and Louie settled the Illinois Case with the Children, they continued to fight with each other over the enforcement of the JOD.

One of the provisions of the property settlement in the JOD awarded Louie the marital home at 4910 Carroll Lake Road, Commerce Township, Michigan ("Marital Home"). Holly was granted a lien on the Marital Home to secure a $285,000.00 payment to her. The JOD provided that if Louie did not make the payment within 60 days, the State Court would order the sale of the Marital Home. When the Debtor failed to make the payment, the State Court appointed a receiver to sell the Marital

- 4 -

Home.  On August 26, 2019, the receiver sold the Marital Home for $475,000.00.  After paying some of the expenses of sale, the receiver placed the balance of the sale proceeds in a separate account and filed a motion in the State Court on September 4, 2019 for approval of his final report and for authority to disburse the remaining proceeds.

On September 16, 2019, before the State Court ruled on the receiver's motion, Louie filed this Chapter 13 case.

From the outset, the bankruptcy case was contentious.  The receiver appointed in the Divorce Case moved for authority to disburse the proceeds of the sale of the Marital Home and for an award of administrative expenses.  Farmers State Bank ("Bank"), holding a mortgage on the Pike Farm, moved to lift the automatic stay to permit it to foreclose on its mortgage.  Holly requested an order under Fed. R. Bankr. P. 2004 requiring Louie to produce a long list of documents about his financial affairs dating back to January 1, 2017, and sit for an examination about them.  The Chapter 13 Trustee ("Trustee"), Holly, the Bank, and the Internal Revenue Service ("IRS") all objected to Louie's plan.  In addition, the Trustee filed an application seeking to employ a law firm to avoid alleged fraudulent transfers, including the purported transfer of the Pike Farm to the Trust.

While all this was going on, Goldstein, Bershad & Fried, P.C. ("GBF"), the law firm representing Louie, filed a motion to withdraw.  On February 4, 2020, the Court

- 5 -

heard the motion. It was clear that Louie and GBF had a serious falling out and that there were ample grounds to grant the motion to withdraw.

Although not opposing the motion to withdraw, Holly informed the Court at the hearing that, just a few days earlier, on January 31, 2020, she had filed a motion to convert this case to Chapter 7 ("Motion to Convert") (ECF No. 108). Holly alleged in the Motion to Convert that Louie was not eligible to be a debtor in Chapter 13 because his debts exceed the statutory limits, that he had failed to make payments to her for support under the JOD, and that he had acted in bad faith by making fraudulent transfers of property, including the transfer of the Pike Farm to the Trust. Louie, who appeared pro se at the hearing, informed the Court that he had written, and brought with him for filing, a response (ECF No. 110) to GBF's motion to withdraw. The response did not oppose GBF's withdrawal, but requested that this Chapter 13 case be dismissed.

At the conclusion of the hearing, the Court granted GBF's motion to withdraw. The Court next stated that it would construe Louie's written response to GBF's motion as a motion for dismissal ("Motion to Dismiss"), even though it was not styled as a motion, because Louie had filed it pro se, and in it specifically requested that his case be dismissed under § 1307(b) of the Bankruptcy Code. No party objected. The Court then set a deadline for all parties at the hearing to respond to both motions and set them for hearing on April 2, 2020.

Holly and the Trustee filed responses and appeared and argued at the hearing. They want the case converted. Louie, now represented by a new law firm, filed a response and argued at the hearing against conversion. He wants the case dismissed. Although no longer representing Louie, GBF — asserting an administrative expense claim for attorney fees — filed a response and argued at the hearing in support of Louie against conversion and in favor of dismissal. Two other creditors filed responses, one supporting conversion, Logan Agri-Credit AG, and one supporting dismissal, Vanessa Hoffman, but neither appeared at the hearing. Two other creditors, the Bank and the IRS, did not file responses but did appear at the hearing. Neither of them took a position on whether the case should be dismissed or converted.

At the end of the hearing, the Court took the two motions under advisement.

## **Discussion**

### Chapter 13

Before turning to the specific statutory provisions governing the two motions before the Court, a little context regarding Chapter 13 is useful. The Bankruptcy Code permits individuals and entities to seek various forms of relief from their creditors under different chapters, each of which has its own features and requirements. Section 301(a) of the Bankruptcy Code provides that a bankruptcy case may be voluntarily filed under any chapter so long as the individual or entity filing the case is eligible to be a debtor under the chapter selected. In contrast, an individual or entity

may be involuntarily thrust into a bankruptcy case under § 303(a) of the Bankruptcy Code, but only if an involuntary petition is filed against them for a liquidation under Chapter 7 or a reorganization under Chapter 11.

There is no such thing as an involuntary Chapter 13 case. As explained by the Supreme Court in Harris v. Viegelahn, 575 U.S. 510 (2015), Chapter 13 is a "wholly voluntary" proceeding. See also Toibb v. Radloff, 501 U.S. 157, 166 (1991) (noting "Congress' primary concern about a debtor's being forced into a bankruptcy under Chapter 13" because being "compelled to toil for the benefit of creditors [would be] in violation of the Thirteenth Amendment's involuntary servitude prohibition") (citing H.R. Rep. No. 95-505, at 120).

Unlike other chapters of the Bankruptcy Code, only an individual may file for Chapter 13 relief. Further, an individual filing for Chapter 13 relief must have regular income and debts below statutorily prescribed amounts. In contrast to Chapter 7, an individual who voluntarily petitions for Chapter 13 relief gets to keep possession of their property rather than turning it over to a trustee. An individual who is eligible to seek Chapter 13 relief is given the opportunity to adjust his or her debts by proposing and having a bankruptcy court approve a plan during which the individual commits to pay their projected disposable income for a period of up to five years to a Chapter 13 trustee to distribute to their creditors. If a Chapter 13 debtor is successful in getting a

plan confirmed and completing all the payments required under the plan, the debtor is granted a discharge of their debts under § 1328(a) of the Bankruptcy Code.

Congress has consistently encouraged individuals to voluntarily try to pay some amount of their income going forward to their creditors under a Chapter 13 plan rather than just seek to discharge their debts in a Chapter 7 liquidation. As noted in Seafort v. Burden, 437 B.R. 204 (B.A.P. 6th Cir. 2010), "[a] primary objective of BAPCPA, insofar as consumer bankruptcy was concerned, was to 'ensure that debtors repay creditors the maximum they can afford.'" Id. at 210, *aff'd on other grounds by* Seafort v. Burden, 669 F.3d 662 (6th Cir. 2012) (citing H.R. Rep. No. 109-31, pt. 1, ad 2 (2005)). This congressional preference for Chapter 13 over Chapter 7 dates back at least as far as the enactment of the Bankruptcy Code in 1978, where the intent was to "'expand substantially the kinds of individuals that are eligible for relief under chapter 13.'" Hildebrand v. Social Security Administration (In re Buren), 725 F.2d 1080, 1082 (6th Cir. 1984) (quoting H.R. Rep. No. 95-595, 311-12 (1977)).

But not all Chapter 13 cases end with a discharge. The Bankruptcy Code imposes many responsibilities on a debtor in a Chapter 13 case, both pre-confirmation and post-confirmation, and sets deadlines for the debtor to perform those responsibilities. Some debtors fail to meet those responsibilities pre-confirmation and thus fail to even get a plan confirmed. Others succeed in getting a plan confirmed but then fail to meet those responsibilities post-petition.

Even if a debtor performs all their statutory responsibilities pre- and post-confirmation, is successful in confirming a plan, and begins making payments under the plan, they may later come to a point in time when they are either unwilling or unable to continue to make the plan payments. The obvious reason is because Chapter 13 plans are predicated on an individual's projected disposable for a period of time going forward. Naturally, a debtor's performance of a confirmed plan will be affected by changes in income and expenses that occur in the debtor's life over the term of the plan.

Those Chapter 13 cases that do not end with a discharge under § 1328(a), or what is known as a hardship discharge under § 1328(b), end in one of two other ways: by being dismissed or converted to another chapter of the Bankruptcy Code under § 1307 of the Bankruptcy Code, titled "Conversion or dismissal." Sections 1307(a) and (b) govern a request for conversion or dismissal that is made by the debtor, and § 1307(c), (d), and (e) govern a request for conversion or dismissal that is made by another party.

<u>Positions of the parties</u>

Louie's Motion to Dismiss is brought under § 1307(b) which reads as follows:

On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

- 10 -

Louie and GBF argue that the straightforward language of § 1307(b) gives Louie an absolute right to dismiss his Chapter 13 case at any time. According to them, the word "shall" is mandatory and does not leave the Court any choice but to dismiss this case.

Holly and the Trustee counter that a debtor's right to dismiss under § 1307(b) is not absolute, and can be lost based on the debtor's conduct during the Chapter 13 case. Holly and the Trustee argue that Louie has acted in bad faith in numerous respects throughout this case including failing to disclose his ownership interest in the Pike Farm, failing to disclose the transfer of the Pike Farm to the Trust for no consideration, failing to properly disclose his interest in Louie's Tree Service, failing to disclose transfers of machinery, equipment and other property, failing to list the Bank, the IRS and other creditors, and failing in numerous other respects to file accurate schedules. Holly and the Trustee argue that by this bad faith conduct, Louie has "forfeited" his right to dismiss this case under § 1307(b).

Holly's Motion to Convert is brought under § 1307(c) which reads as follows:

[O]n request of a party in interest . . . and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause[.]

Section 1307(c) goes on to list eleven different examples of "cause."

Holly, again supported by the Trustee, argues that the same bad faith conduct that prevents Louie from dismissing his case under § 1307(b), also provides cause for

- 11 -

conversion under § 1307(c). Moreover, without the Court having to get into the type of fact intensive review that is ordinarily required to find bad faith, the Court should find cause for conversion based on either of two facts that Holly and the Trustee say are not in dispute: that Louie's debts exceed the statutory maximum for Chapter 13 eligibility, and that Louie has failed to pay his domestic support obligations to Holly while he has been in Chapter 13. Holly and the Trustee assert that once cause is established under § 1307(c), the Court may convert or dismiss, whichever is in the best interest of the creditors and the estate. Here, they argue, those interests are best served by conversion, which would allow a Chapter 7 trustee to seek to avoid any fraudulent transfers by Louie, including the transfer of the Pike Farm to the Trust, and liquidate Louie's business and other assets.

Louie, supported by GBF, replies by disputing the many allegations of bad faith and eligibility, but one allegation Louie does not dispute is that he has failed to pay to Holly all his post-petition support obligations under the JOD. As a result, he does not contest that there is cause for the Court to dismiss or convert under § 1307(c)(11), which provides that cause includes a "failure of the debtor to pay any domestic support obligation that first becomes payable after the filing of the petition." But even if the Court reaches the Motion to Convert — which Louie urges the Court not to do based on his absolute right to dismiss under § 1307(b) — and then finds cause under

- 12 -

§ 1307(c), Louie argues that his creditors and the estate are best served by dismissal, not conversion.

The Bank and the IRS expressed no preference between dismissal or conversion, although the Bank wants the automatic stay lifted if the case is not dismissed. The Bank and the IRS figure they are both going to get paid either way.

<u>The Motion to Dismiss</u>

If Louie is correct that § 1307(b) gives him an absolute right to dismiss his case, such that the Court must grant the Motion to Dismiss, then the Court need not reach the question of whether the Court should grant the Motion to Convert. It is only if the Court finds that Louie does not have an absolute right to end his case by dismissing it under § 1307(b) that the Court must consider whether the case should be converted to Chapter 7 under § 1307(c). Therefore, the Court will first discuss the Motion to Dismiss before turning to the Motion to Convert.

Reflecting the voluntary nature of Chapter 13, § 1307 gives a Chapter 13 debtor the right to end their case in two different ways, either by converting it to Chapter 7 under § 1307(a) or by dismissing it under § 1307(b). Here, Louie requests the second way, dismissal. Section 1307(b) provides that "on request of the debtor at any time," the Court "shall dismiss a case under this chapter." Section 1307(b) does not require a debtor seeking dismissal to give any reason, explain any motive, or show any facts. Further, it sets no temporal limitations. All a debtor has to do under the statute is make

- 13 -

a "request" to dismiss, and the request can be made "at any time." The only exception in the statute is that the case must not have previously been converted under §§ 706, 1112, or 1208. Where that exception does not apply, as in this case, the statute tells the bankruptcy court what to do when the request is made: "the court shall dismiss a case under this chapter." The statute affords the bankruptcy court no discretion. The plain and unambiguous language of § 1307(b) compels the Court to grant the Motion to Dismiss.[1]

Ordinarily, when the language of a statute is clear and unambiguous, the Court applies the statute and the Court's task is finished. But here, Holly and the Trustee correctly point out that some courts — including some circuit courts of appeals — have declined to dismiss a Chapter 13 case when requested by a debtor, despite the plain and unambiguous language of § 1307(b). Those cases invariably involve a debtor who is a bad actor. To those courts, it just does not seem right that an individual can come into

---

[1] As noted, § 1307(a) allows a Chapter 13 debtor to end their Chapter 13 case in another way by converting it to Chapter 7. Section 1307(a) does so by providing that the debtor "may convert" their case to Chapter 7 "at any time." The text of § 1307(b) is similar to the text of § 1307(a) in some respects. Both statutes permit the request for relief to be made at any time, and both statutes provide that "any waiver of this right is unenforceable." But they are different in other respects. Section 1307(a) contains no express exception but § 1307(g) states that "notwithstanding any other provision" of § 1307, a Chapter 13 "case may not be converted to a case under another chapter . . . unless the debtor may be a debtor under such chapter." In contrast, § 1307(b) does contain an express exception where the case has previously been converted, but there are no other Bankruptcy Code sections that place any limits on a debtor's right to request relief under § 1307(b). Another difference is that § 1307(b) states what a *court* "shall" do, in contrast to § 1307(a), which states what a *debtor* "may" do.

a Chapter 13 case, behave badly in a way that is contrary to the Bankruptcy Code's purpose, and then duck out of the case whenever they choose to do so. Courts in those cases have searched for a way to avoid what they believe is an unfair, and in some cases outrageous, result.

Holly and the Trustee concede that there is no reported Supreme Court or Sixth Circuit Court of Appeals case holding that a bankruptcy court can deny a Chapter 13 debtor's request to dismiss under § 1307(b), but they cite opinions from other circuit courts of appeals and from bankruptcy courts within the Sixth Circuit that they believe provide persuasive authority for this Court to do so. A leading case that they rely on — and one that has some similar facts to this case — is Jacobsen v. Moser (In re Jacobsen), 609 F.3d 647 (5th Cir. 2010).

In Jacobsen, a Chapter 13 trustee moved to convert the case to Chapter 7 for cause under § 1307(c). In response, the debtor requested that his Chapter 13 case be dismissed under § 1307(b). The bankruptcy court found that the debtor had failed to disclose substantial real property assets on his schedules and statement of financial affairs, and that such conduct established bad faith. As a result, the bankruptcy court denied the debtor's request for dismissal and converted the case to Chapter 7, and the district court affirmed. The debtor appealed to the Fifth Circuit Court of Appeals.

The Fifth Circuit began its opinion by noting that the question of whether there is an exception to a debtor's right to dismiss under § 1307(b) for bad faith conduct was

an issue of first impression for it.  Id. at 652.  The court observed that there has long

been a split among some courts on the issue, citing early decisions, Nash v. Kester (In

re Nash), 765 F.2d 1410 (9th Cir. 1985) and Barbieri v. RAJ Acquisition Corp. (In re

Barbieri), 199 F.3d 616 (2d Cir. 1999), holding that a debtor has an absolute right to

dismiss under § 1307(b), and Molitor v. Eidson (In re Molitor), 76 F.3d 218 (8th Cir.

1996), holding that § 1307(b) is subject to an exception when a debtor acts in bad faith.

Jacobsen, 609 F.3d at 653-54.

The Jacobsen court next reviewed Marrama v. Citizens Bank of Massachusetts

(In re Marrama), 549 U.S. 365 (2007), a Supreme Court opinion that was decided after

the cited opinions splitting on § 1307(b).  Marrama did not deal with a debtor's request

to dismiss a Chapter 13 case, but instead involved a Chapter 7 debtor's motion to

convert his case to Chapter 13.

In Marrama, a Chapter 7 debtor made a number of misleading and inaccurate

statements about his principal asset, a house in Maine, including omitting that he had

transferred it for no consideration to protect it from his creditors.  He also listed the

value as zero when in fact it had substantial value.  Id. at 367-68.  After the Chapter 7

trustee stated his intent to administer the Maine property, the debtor moved to convert

his case to Chapter 13.  The debtor's motion was made under § 706(a), which provides

that a Chapter 7 debtor "may convert" to Chapter 13 "at any time" so long as the case

has not previously been converted.  The bankruptcy court denied the debtor's

conversion motion because the debtor had acted in bad faith. Id. at 369-70. The Court of Appeals for the First Circuit affirmed, rejecting the debtor's argument that he had an absolute right to convert from Chapter 7 to Chapter 13. The Supreme Court affirmed, holding that the right to convert to Chapter 13 under § 706(a) is not absolute, and is not available to a debtor who has been shown to have acted in bad faith. Id. at 374-76.

The Jacobsen court pointed out that even though Marrama dealt with § 706(a), and not § 1307(b), a number of courts have turned to Marrama's holding that a Chapter 7 debtor does not have an absolute right to convert to Chapter 13 under § 706(a), for guidance in determining whether a Chapter 13 debtor has an absolute right to dismiss under § 1307(b). Jacobsen, 609 F.3d at 657-60. After canvassing the post-Marrama cases on each side of this issue, Jacobsen held as follows:

> Following the Supreme Court's decision in Marrama, we hold that a bankruptcy court has the discretion to grant a pending motion to convert for cause under § 1307(c) where the debtor has acted in bad faith or abused the bankruptcy process and requested dismissal under § 1307(b) in response to the motion to convert.

Id. at 660 (footnote omitted). The Jacobsen court then stated two principles that underpin its holding. First, it "reject[ed] a construction of the statute that would afford an abusive debtor an escape hatch[.]" Id. Second, "Marrama was clear that bankruptcy courts are vested with the authority to take appropriate action in response to an abuse of process." Id. at 661.

- 17 -

After Jacobsen, other courts have also cited Marrama in support of their denial of a Chapter 13 debtor's request to dismiss under § 1307(b).   See In re Ross, 858 F.3d 779, 784-86 (3d Cir. 2017) (affirming the bankruptcy court's ruling that a pending § 1307(b) motion did not prohibit the court from granting a creditor's request to enjoin subsequent filings, but reversing because the bankruptcy court did not adequately explain its reasoning based on the facts in the case); Elliott v. Sutton (In re Elliott), No. 12-30707, 506 Fed. Appx. 291, 293 (5th Cir. Jan. 7, 2013) (finding the court's earlier opinion in Jacobsen to be "on all fours" and reaffirming that a debtor cannot use § 1307(b) as an "escape hatch from which to escape a conversion motion filed under § 1307(b)"); In re Rosson, 545 F.3d 764 (9th Cir. 2008) (extending Marrama to a Chapter 13 debtor's motion to dismiss, finding that the "'absolute right' position [was] no longer viable").   The explanation in those opinions for applying Marrama to § 1307(b) largely mirrors Jacobsen.

The Court respectfully disagrees with Jacobsen and those other decisions relying on Marrama to hold that a Chapter 13 debtor's right to dismiss under § 1307(b) is somehow subject to a bad actor exception, even where, as here, there is a pending motion by another party to convert the Chapter 13 case to Chapter 7 under § 1307(c).

Fairly read, Marrama is a case about who is entitled to enjoy the rights of the Bankruptcy Code in dealing with their creditors.   Unlike Louie, who no longer wants to be in a bankruptcy case at all, the debtor in Marrama wanted to stay in a bankruptcy

- 18 -

case. Unlike Louie, who no longer wants to use the Bankruptcy Code to deal with his creditors, the debtor in <u>Marrama</u> wanted to continue to use the Bankruptcy Code to deal with his creditors, only under a different chapter — Chapter 13 rather than Chapter 7.

That this distinction is important can be seen from the very first sentence in <u>Marrama</u> that states that "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" <u>Marrama</u>, 549 U.S. at 367 (quoting <u>Grogan v. Garner</u>, 498 U.S. 279, 286, 287 (1991)). From that premise, the Supreme Court next identified an issue that it described as arising with "disturbing frequency[:] whether a debtor who acts in bad faith prior to, or in the course of," a Chapter 13 case "thereby forfeits his right to obtain Chapter 13 relief." <u>Id.</u> The Supreme Court observed that on this issue, "the federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case." <u>Id.</u> (footnote omitted). After reviewing the specific bad faith conduct found by the lower courts in the case before it, the Supreme Court stated that "we conclude that the courts in this case correctly held that [the debtor] forfeited his right to proceed under Chapter 13." <u>Id.</u> at 371.

Having found that the debtor in <u>Marrama</u> had "forfeited" any right to Bankruptcy Code relief in Chapter 13, the Supreme Court turned its attention to the text of § 706(a), the statute under which the debtor brought his motion. The Supreme Court explained

- 19 -

that even though § 706(a) states that a debtor "may convert" his Chapter 7 case to Chapter 13 "at any time," this does not mean that this is "absolute" because § 706(d) expressly limits the § 706(a) right of conversion by providing that a Chapter 7 debtor may not convert a Chapter 7 case to "a case under another chapter of this title unless the debtor may be a debtor under such chapter." Id. at 376-77. The Supreme Court explained that the debtor in the case before it was not qualified to be a Chapter 13 debtor. The reason is because the debtor's bad faith conduct would "justify dismissal" of his Chapter 13 case if he were a debtor in such case. In other words, he was not eligible to be a debtor in a Chapter 13 case and was therefore barred by § 706(d) from converting to Chapter 13 under § 706(a).

> [I]n practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of "honest but unfortunate debtor[s]" that the bankruptcy laws were enacted to protect.

Id. at 373-74.

The fact that a dismissal order under § 1307(c) was not yet procedurally available since the debtor's case was still in Chapter 7 was no obstacle because

> the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Bankruptcy Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief

- 20 -

and may provide a debtor with an opportunity to take action prejudicial to
creditors.

Id. at 375 (footnote omitted).

In substance, the Supreme Court concluded that no purpose would be served by
allowing a Chapter 7 debtor who is not eligible to be a debtor in a Chapter 13 case
because of bad faith conduct, to convert to Chapter 13, only to later require the
bankruptcy court hear and grant a post-conversion motion that seeks dismissal or
reconversion because of the very same bad faith conduct that makes the individual
ineligible to be a Chapter 13 debtor in the first place.

Marrama is grounded in the Supreme Court's stated concern that only an honest
and unfortunate debtor is entitled to Bankruptcy Code relief in dealing with their
creditors. By his bad faith conduct, the debtor in Marrama was found to have
"forfeited" the right to deal with his creditors under Chapter 13 of the Bankruptcy
Code. But, as explained earlier, Louie is not like the debtor in Marrama. Louie seeks
no further help from the Bankruptcy Code in dealing with his creditors. His eligibility
for relief under some other chapter of the Bankruptcy Code is irrelevant since he does
not want relief under any other chapter. He just wants out. Even assuming that Louie
has acted in bad faith, what Bankruptcy Code right in dealing with his creditors can he
truly be said to have "forfeited" by such bad faith conduct? Has he "forfeited" the right
to deal with his creditors outside of the bankruptcy court, with no help from the

- 21 -

Bankruptcy Code? Nothing in <u>Marrama</u>, which focused on who is entitled to enjoy Bankruptcy Code relief, suggests such a result. That Louie may not be within the class of honest and unfortunate debtors described by Supreme Court in <u>Marrama</u> as being entitled to bankruptcy relief, is not a basis to preclude him from dealing with his creditors outside of bankruptcy.

<u>Marrama</u> can only be read to support denial of a Chapter 13 debtor's motion to dismiss under § 1307(b) if it is construed as a case about punishment rather than about who has the right to seek bankruptcy relief. In the context of this case, assuming that Louie did act in bad faith, and that Louie no longer seeks any form of bankruptcy relief, the relevant question then becomes whether <u>Marrama</u> permits the Court to punish Louie for his bad faith conduct by denying the Motion to Dismiss and forcing him to stay in a bankruptcy case. A close reading of the opinion shows that it does not.

It is true that <u>Marrama</u> cites § 105(a) and a bankruptcy court's inherent powers as authority to deny the debtor's conversion motion in that case. However, in <u>Law v. Siegel</u>, 571 U.S. 415 (2014), the Supreme Court later clarified that, even though <u>Marrama</u> is correct that § 105(a) and a bankruptcy court's inherent powers can be used to punish a debtor's misconduct, § 105(a) and a bankruptcy court's inherent powers cannot be used to contravene an express provision of the Bankruptcy Code.

In <u>Law</u>, the debtor filed a Chapter 7 petition and claimed a homestead exemption in certain real property in California. The bankruptcy court found that the debtor made

fraudulent representations in the bankruptcy case about a fictitious loan and mortgage on the property. Id. at 418-19. The Chapter 7 trustee incurred enormous fees in litigating to get to the bottom of the debtor's fraud. The bankruptcy court granted the trustee's motion to "surcharge" the debtor's interest in the property despite the debtor's allowed claim of exemption. The bankruptcy appellate panel and the Ninth Circuit Court of Appeals affirmed. Id. at 420. The debtor appealed to the Supreme Court, arguing that this punishment contravenes Bankruptcy Code § 522(b), which states that a debtor "may exempt" property within the enumerated exemptions in § 522, and contravenes § 522(k), which states that a debtor's exempt property is not liable for payment of administrative expenses of the bankruptcy case.

The Supreme Court began Law by agreeing with Marrama that § 105(a) and a bankruptcy court's inherent powers authorize a bankruptcy court to sanction misconduct. Id. at 420-21. But then the Supreme Court stated that "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" Id. at 421 (quoting 2 Collier on Bankruptcy, ¶ 105.01[2], p. 105-6 (16th ed. 2013)). After reviewing the text of § 522, the Supreme Court held that the bankruptcy court "exceeded the limits of its authority under § 105(a) and its inherent powers" when it ordered that the property claimed by the debtor as a homestead exemption be made available to pay the trustee's attorney fees. Id. at 422-23.

- 23 -

The Supreme Court then explained that <u>Marrama</u> "does not point toward a

different result." <u>Id.</u> at 425.

> In <u>Marrama</u>, the Court reasoned that if the case had been converted to
> Chapter 13, § 1307(c) would have required it to be either dismissed or
> reconverted to Chapter 7 in light of the debtor's bad faith. Therefore, the
> Court suggested, even if the Bankruptcy Court's refusal to convert the
> case had not been expressly authorized by § 706(d), that action could have
> been justified as a way of providing a "prompt, rather than delayed, ruling
> on [the debtor's] unmeritorious attempt to qualify" under § 1307(c). At
> most, <u>Marrama</u>'s dictum suggests that in some circumstances a
> bankruptcy court may be authorized to dispense with futile procedural
> niceties in order to reach more expeditiously an end result required by the
> Code. <u>Marrama</u> most certainly did not endorse, even in dictum, the view
> that equitable considerations permit a bankruptcy court to contravene
> express provisions of the Code.

<u>Id.</u> at 426 (quoting <u>Marrama</u>, 549 U.S. at 376).

Stating that its decision in <u>Law</u> "does not denude bankruptcy courts of the

essential authority to respond to debtor misconduct with meaningful sanctions," the

Supreme Court then went on to list various remedies for misconduct that bankruptcy

courts do possess under § 105(a) and inherent authority. <u>Id.</u> at 427 (internal quotation

marks and citation omitted).[2]

The Supreme Court concluded as follows:

> But whatever other sanctions a bankruptcy court may impose on a
> dishonest debtor, it may not contravene express provisions of the
> Bankruptcy Code by ordering that the debtor's exempt property be used

---

[2] <u>Law</u> listed the following examples: denial of discharge under § 727(a); imposition of sanctions
under Fed. R. Bankr. P. 9011; and criminal sanctions under 18 U.S.C. § 152 of imprisonment of five
years. <u>Id.</u> at 427.

- 24 -

to pay debts and expenses for which that property is not liable under the Code.

Id. at 427-28.

The same analysis applies here. A bankruptcy court may punish a Chapter 13 debtor's misconduct, and has lots of tools to do so,[3] but there is nothing in the Bankruptcy Code that permits a bankruptcy court to punish a Chapter 13 debtor's misconduct by denying the debtor's motion to dismiss under § 1307(b). Marrama does not hold otherwise. Marrama is not about punishing bad conduct, but about ensuring that only individuals eligible for bankruptcy relief get such relief. Law makes clear that a bankruptcy court may not use its inherent power or § 105(a) to contravene the plain language of the Bankruptcy Code in § 1307(b) by creating a bad actor exception. The plain language of § 1307(b) allows a Chapter 13 debtor to make a "request," at

---

[3] Another example of an available remedy for misconduct by a Chapter 13 debtor can be seen in in In re Haddad, 572 B.R. 661 (Bankr. E.D. Mich. 2017). The Chapter 13 debtor in that case had repeatedly failed to disclose a personal injury claim, even amending her confirmed plan to omit any payment to her unsecured creditors, even though she knew she would be receiving the proceeds. Just as the plan was completing, the Chapter 13 trustee received a letter stating that the debtor's personal injury claim had been settled for over $750,000.00, an amount that was more than ten times the amount of the allowed unsecured claims in the case. When the proceeds were paid over to the trustee, the trustee proposed a plan modification to use some of the proceeds to pay those claims. In response, the debtor moved to dismiss her case under § 1307(b) and stated that she had no intent to use the settlement proceeds to pay those claims. The court granted the debtor's motion to dismiss. However, the court did impose a remedy, one that is permitted under the Bankruptcy Code. The court found that the debtor's dismissal in response to the trustee's plan modification smacked of gamesmanship, depriving the debtor's creditors of a distribution out of the debtor's undisclosed settlement proceeds even though the debtor had kept them at bay for years during her Chapter 13 case. The court held that this was sufficient cause under § 349(b)(3) of the Bankruptcy Code to include in the dismissal order a provision allowing the trustee to retain enough of the settlement proceeds for the trustee to pay all allowed claims.

- 25 -

"any time," and directs that the Court "shall dismiss," subject only to the express exception in § 1307(b) for a case that was previously converted. To deny a debtor's request in order to punish the debtor for misconduct is simply not permitted.

Earlier in this opinion, the Court indicated that it is unnecessary for the Court to reach the Motion to Convert if the Court concludes that § 1307(b) permits an absolute right of dismissal for a Chapter 13 debtor. Without turning to the merits of the Motion to Convert, there is one aspect about it that requires discussion here, in the part of the opinion that deals with the Motion to Dismiss. That aspect has to do with the timing of its filing.

The Motion to Convert was filed on January 31, 2020, before the Motion to Dismiss was filed on February 4, 2020. It is fair to infer that Louie, just like the debtor in Jacobsen, filed the Motion to Dismiss in response to the Motion to Convert. Does that matter? And does it make any difference that Louie conceded at the hearing that if the Court does reach the Motion to Convert, Louie's failure to pay a domestic support obligation to Holly constitutes cause for relief under § 1307(c)(11), leaving the Court with only one question under § 1307(c), that being whether dismissal or conversion "is in the best interests of creditors and the estate."

The answer to both questions is no.

As explained, § 1307(b) permits a debtor to make a request to dismiss "at any time," and states unequivocally that if the debtor makes the request, the Court "shall

- 26 -

dismiss." The statute does not make any exception to "any time" based on whether another motion is pending in the case, even if that motion alleges bad faith conduct by the debtor and requests conversion. "Any time" means any time. Under the plain language of § 1307(b), it does not matter that Holly filed her Motion to Convert before Louie filed his Motion to Dismiss. Nor does it matter even if Louie filed the Motion to Dismiss in response to Holly's Motion to Convert. Section 1307(b) does not require a reason, does not ask why a debtor filed the motion, and does not limit in any way the time when a debtor may file the motion. The only exception is if the case was previously converted. Section 1307(b) could not be any more plain: the debtor can make the request "at any time" and the bankruptcy court "shall dismiss."[4]

The Court concludes that it must grant Louie's Motion to Dismiss under the plain and unambiguous text of § 1307(b). Louie's right to dismiss under that section is absolute.[5]

---

[4] The procedure that the Federal Rules of Bankruptcy Procedure prescribes for a motion to dismiss under § 1307(b) illustrates that the debtor's right to dismiss under that Bankruptcy Code section is absolute. Rule 1017(f)(2) requires that a Chapter 13 debtor's request for dismissal under § 1307(b) be made by motion, but specifically provides that the motion be filed and served only as required by Rule 9013. In contrast, Rule 1017(f)(1) requires that a Chapter 7 debtor's request for dismissal under § 707(a), and a Chapter 11 debtor's request for dismissal under § 1112(b), also be made by motion. But these motions must be filed and served as required by Rule 9014, not Rule 9013. Rule 9014 governs "Contested Matters" and requires in Rule 9014(b) that service and notice be made in the manner required for a summons and complaint under Rule 7004. By providing that a request for dismissal by a Chapter 7 or 11 debtor is a "Contested Matter" but a Chapter 13 debtor's request for dismissal under § 1307(b) is not, these rules recognize the "absolute right" to dismiss that § 1307(b) gives to a Chapter 13 debtor.

[5] Because the text of § 1307(b) is so plain and unambiguous, the Court need not and does not rely on the legislative history to help decide the Motion to Dismiss. However, because there are some courts

It may seem unfair that a debtor who acts in bad faith during their Chapter 13 case can just pull the plug and dismiss the case under § 1307(b). Those courts that have denied such motions are understandably frustrated at the availability of what they perceive to be an "escape hatch" for a bad actor. But, as <u>Law</u> makes clear, the answer for a bankruptcy court to deal with the bad actor in these situations is to employ those remedies that the Bankruptcy Code and the bankruptcy court's inherent authority do afford, not rewrite the Bankruptcy Code by creating remedies that directly contravene Bankruptcy Code provisions. The Court does not have the discretion or the authority to punish Louie for misconduct by denying the Motion to Dismiss.

---

that take a contrary view to this Court's, and find that they have discretion to deny a § 1307(b) motion, it is worth noting that the legislative history to § 1307(b), which also references a debtor's right to convert under § 1307(a), does not support their view:

> "Subsections (a) and (b) confirm, *without qualification*, the rights of a chapter 13 debtor to convert the case to a liquidating bankruptcy case under chapter 7 of title 11, at any time, or to have the chapter 13 case dismissed. Waiver of any such right is unenforceable. . . ." S. Rep. No. 95-989, at 141 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5927 (emphasis added).

> "Subsection (a) of section 1307 gives the debtor an absolute right of conversion to a liquidation case at any time. Subsection (b) requires the court, on request of the debtor, to dismiss the case if the case has not already been converted from chapter 7 or chapter 11. . . ." H.R. Rep. No. 95-595, at 428 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6383-84.

<u>In re Patton</u>, 209 B.R. 98, 101 (Bankr. E.D. Tenn. 1997).

## The Motion to Convert

As should be clear by now, the Court is not going to decide the merits of the Motion to Convert, because it is granting the Motion to Dismiss for the reasons explained. That is not intended to minimize the seriousness of the allegations made against Louie in the Motion to Convert. Nor should the Court's decision be mistaken for endorsement of Louie's conduct, either before or during the Chapter 13 case. Had Louie not moved to dismiss under § 1307(b), there is no question that the Court would have found cause for relief under § 1307(c), at least under subpart (c)(11), and perhaps under other subparts as well given the allegations made.

## Conclusion

Even though the Court is ultimately deciding this case based on a legal issue, to properly do its job the Court had to review the extensive facts set forth in the hundreds of pages of documents filed by the parties, including transcripts of testimony and filings from the arbitration, the Divorce Case, the Illinois Case, and this Chapter 13 case. That review convinces the Court that this bankruptcy case was not, and is not, a good idea for either Louie or Holly. It is basically just a continuation of their divorce. Louie filed this case to get some relief from the actions of the receiver appointed by the State Court in the Divorce Case. Filing bankruptcy to get out from a state court's orders in a divorce case is a dubious strategy, and one that rarely suggests any bankruptcy related purpose.

Of course, now that Louie wants out, Holly wants to keep him in. According to Holly, having a Chapter 7 trustee appointed will generate value for all of Louie's creditors because the trustee could file a lawsuit to recover the purported transfer of the Pike Farm to the Trust. Yes, the very Pike Farm that Holly also owned and agreed to transfer to the Trust under the Agreed Order that the Illinois Court entered on Holly and Louie's request when they settled the Illinois Case with the Children. Holly apparently now wants to undo that deal, although that would involve a bankruptcy trustee having to bring the lawsuit against Holly herself, not to mention against the Trust and probably the Children too. Not the type of lawsuit, in the Court's experience, that seems likely to bear fruit any time soon to pay Holly or any other creditors, but one that will surely cost a lot of money and time to litigate.

Holly also wants to keep Louie in bankruptcy because she says that Louie does not and will not comply with the orders of the State Court that entered the JOD. Hard to know exactly what the record would have shown if the Court conducted a full evidentiary hearing, but the Court is deeply skeptical that it is somehow better able to compel Louie to comply with his obligation to pay support to Holly under the JOD than is the State Court that entered the JOD.

As near as the Court can tell, neither Louie nor Holly have any bankruptcy related objective. The Court takes no sides in their fight with one another, and sincerely hopes that they are eventually successful in attaining resolution and closure, but if the

fight continues it will have to be in a forum other than this Court.  Louie voluntarily filed Chapter 13, and the law gives him the right to leave Chapter 13 when he wants, without prejudice to the rights of Holley or any other party in interest.

The Court will enter separate orders consistent with this opinion.

Signed on April 22, 2020

/s/ Phillip J. Shefferly

**Phillip J. Shefferly**
**United States Bankruptcy Judge**